WILLIAMS et, Plaintiffs, v. WILMINGTON (City), Defendant.

Common Pleas Court, Clinton County.

No. 18938. Decided November 23, 1960.

*Messrs. Schilling & Schilling*, for plaintiffs.
*Mr. Frederick J. Buckley*, city solicitor, for defendant, The City of Wilmington.

*Mr. Max H. Dennis*, for Leonard Kaufman and others, intervening defendants.

 For further history see *Omnibus Index* in bound volume.

SWAIM, J. This matter comes before the Court on Motion of the Plaintiffs to strike from the files, a Motion filed by Leonard Kaufman, and 17 other persons, as residents and taxpayers of the City of Wilmington, asking for the Court to allow them to become parties defendant, and to strike from the files an order of the Court making such moving taxpayers, as parties defendant herein.

On August 5, 1960, the plaintiffs filed a petition for detachment of certain lands (belonging to the plaintiff, David Rombach Williams, in which his wife, the Plaintiff, Elizabeth W. Williams, has inchoate right of dower), from the City of Wilmington, under Section 709.41, Revised Code, the pertinent part of which reads as follows:

The owner of unplatted farm lands, annexed to any municipal corporation after the incorporation thereof, may file a petition in the court of common pleas of the county in which the lands are situated, in which such owner shall be named as plaintiff, and the municipal corporation shall be the defendant, setting forth the reasons why the lands should be detached, and the relief prayed for. A summons shall issue on such petition as in other actions, and the case shall proceed as in other causes.

No such action shall be brought, or detachment ordered, or decreed, within five years from the time such lands were annexed by any such municipal corporation, under Sections 707.01 to 707.30, inclusive, and Sections 709.01 to 709.42, inclusive, Revised Code.

The powers of the Court upon the same, are set out in Section 709.42, Revised Code, as follows:

If, upon the hearing of a cause of action as provided by Section 709.41, Revised Code, the court of common pleas finds that the lands are farm lands, and are not within the original limits of the municipal corporation, that by reason of the same

being or remaining within the municipal corporation the owner thereof is taxed and will continue to be taxed thereon for municipal purposes in substantial excess of the benefits conferred by reasons of such lands being within the municipal corporation, and that said lands may be detached without materially affecting the best interests or good government of such municipal corporation or the territory therein adjacent to that sought to be detached; then an order and decree may be made by the court, and entered on the record, that the lands be detached from the municipal corporation, and be attached to the most convenient adjacent township in the same county. Thereafter the lands shall not be a part of the municipal corporation, but shall be a part of the township to which they have been so attached. The costs shall be taxed as may seem right to the court.

The petition of the plaintiffs describes a triangle containing 1.53 acres, south of center of U. S. Highway No. 22, running 270 feet, to the easterly corporation line, 571 feet southerly with the corporation line, thence with northerly 500 feet with eastern line of J. W. Denver Williams Memorial Park, to beginning, and states that plaintiff, David Rombach Williams, inherited the lands from his father and mother. The petition further states that:

"such lands are not within the original corporate limits of said municipality, but were annexed thereto and became a part of the extension thereof on or about the year 1896., - - that the same are zoned for residential purposes. - - - that by reason of said lands being and remaining within said City of Wilmington, Ohio, plaintiffs are taxed and will continue to be taxed thereon for municipal purposes in substantial excess of the benefits and municipal improvements conferred by reason of such lands being within the municipality.

"- - - that above described real estate is now and has always previously hereto been farmed and used for agricultural purposes, and - - - is an integral part of the extensive farming operation of five hundred (500) acres carried upon by the plaintiffs upon the real estate located in Union Township, Clinton County, Ohio, contiguous to the subject real estate, - - - upon the north and south sides of U. S. Highway No. 22, - - - that

said subject real estate, which are farm lands, are of no benefit to the city in any way, except that defendant city has been levying taxes thereon yearly, since 1896, for its own purposes.

"- - - that detachment of the said—farm lands—from the incorporated territory of the city—and the attachment of the same to Union Township, Clinton County, Ohio, will not affect the good government of said adjacent territory, or of said City, or injure them in any way whatsoever.

"- - - that there has been no annexation of lands in this particular area since the turn of the century, that said lands have never been laid out into streets or alleys, nor are they so needed,

"and—the lands—are not needed for the extension of said city nor for any municipal or public use or purpose."

The petitioners then pray that said lands be detached from the incorporated territory of the City of Wilmington, Ohio, and annexed to Union Township, in Clinton County, Ohio, or to the cost convenient township in same county, and for further relief.

The City of Wilmington, Ohio, on August 6, 1960, was served by personal service of summons upon J. Bates Harcum, Mayor of said City, its chief executive officer.

The City of Wilmington, Ohio, by Frederick J. Buckley, the City Solicitor, filed an Answer to the Petition, on September 3, 1960, alleging and praying:

- - - the City of Wilmington, Ohio,—for answer to the petition of the plaintiffs - - - admits the allegations thereof. Further answering - - - defendant says that it does not know, but has reason to believe, and therefore alleges, that the immediately prospective use of the land described in the petition is as a commercial shopping center, rather than for agricultural purposes.

- - - Defendant prays that the Court determine whether such land may be detached without materially affecting the best interests of good government of the City - - - or the territory therein, adjacent to that sought to be detached, and render - - - such judgment as may be just and proper.,—

On September 15, 1960, there was filed in this action, a Motion of Taxpayers by Leonard Kaufman, and seventeen (17) other persons, who state:

that they are residents and taxpayers of the City of Wil
mington, Clinton County, Ohio, the Defendant—, and, a
such, are interested in the outcome of this action inasmuch a
the same affects the tax duplicate and the best interests an
good government of said City—, that the defense interpose
to the petition—is not sufficiently adverse to protect the bes
interests and good government of said City and constitutes a
abuse of corporate power; that the intervention of these peti
tioners is appropriate in order that the facts and issues in
volved in this proceeding may be fully explored and the Cour
adequately informed regarding the same - - - that the Cour
has within its inherent power to grant these petitioners leav
to become parties defendant to this action, - - - that this re
quest is made in good faith and not for the purpose of impedin
or delaying this proceeding.

and they then ask for leave to become parties defendant, t
intervene with right to plead and participate in these proceed
ings.

On same day, the Court found the Motion was well taken
and granted the resident taxpayers leave to become partie
defendant and to plead and participate in the action.

On September 22, 1960, the plaintiffs filed motion for th
Court

to strike from the files - - - motion previously filed herei
by—Leonard Kaufman and others, wherein it was sought t
obtain leave to intervene in this case—the entry sustainin
said motion.—Plaintiffs state that such motion is false in fac
and a sham, that the motion was filed by said Leonard Kauf
man and others—well knowing that they were neither necessar
parties nor proper parties to the determination of the issue
made herein - - - the same was filed for one purpose only
namely the delay of a valid petition.

On September 23, 1960, the said Leonard Kaufman an
others prematurely filed an Answer in this cause, while sai
Motion to strike was pending, and thereafter, plaintiffs file
Motion to strike this prematurely filed Answer from the files
which Motion to strike the prematurely filed Answer will o
necessity be sustained, with the right to have the same re-draw
and refiled, after journal entry is entered on this Opinion.

In *Village of Fairview* v. *Giffee*, 73 Ohio St., 183, 76 N. E., 65 (December 1905), the Supreme Court considered a former similar statute as to detachment of real estate from a municipal corporation (95 Ohio Laws, 259, Sections 1536-60 and 1536-61, Revised Statutes), where was a petition for detachment filed in Court and then an attack by the Village upon the constitutionality of the statutes. The Supreme Court in holding the statute constitutional, and the petitioner could maintain his action, stated,—pages 190-191-192,

It is indisputable that it is a judicial function to hear and determine a controversy between adverse parties, to ascertain the facts, and applying the law to the facts, to render final judgment. In this statute the general assembly has recognized the fact that individual rights as opposed to public interests may have been encroached upon by the rape and taxation of unplatted, and it may be, unplattable, farm lands for city and village purposes without benefit to the owner; and has provided that when such a condition has been found to exist, "thereafter that such lands shall not be a part of such city or village." This is a general statute and in order to provide for its due administration in all cases of the kind which the legislature had in mind, it is provided that a suit may be brought by petition in the court of common pleas of the county in which the lands are situated, with the owner as plaintiff and the city or village as defendant, "setting forth why such lands should be detached, and the relief prayed for. On such petition a summons shall issue as *in other actions*, and *such cause* shall proceed as *in other causes.*" If, on the hearing of the cause, the allegations are found to be true, or in the general language of the statute, the lands are found to be farm lands and that the detachment of the same would not "materially affect the good government" of the adjacent territory in the city or village, the court may "in his discretion" make a decree, etc., "to order or not to order the detachment of unplatted lands." - - - It seems to us that the clause "without materially affecting the good government of the adjacent territory within such city or village limits," and the phrase "in his discretion" do not impart an absolute discretion upon a matter of public policy affecting the municipal government, but rather a judicial discretion to be

exercised upon the hearing of the cause in determining whethe the alleged reasons for detachment have a foundation in fac and whether the detachment of the lands would in fact sub stantially embarrass the municipality. If, for example, i should appear that the land owner was taxed for municipa purposes, and was not, and could not, be correspondingly bene fited, it would not be a sufficient reason for withholding the orde detaching the land merely because the municipality would other wise lose the taxes. It should appear that the corporatio would in some way be substantially prejudiced by detachment This would appear only by evidence introduced upon a forma hearing.

Taxpayers actions have discussed as follows:

The right of a taxpayer to institute and maintain an actio in a proper case for the protection of his own interests or thos of other taxpayers, or of the public generally, has long bee recognized in Ohio. In some instances, this right is granted or at least defined and regulated, by statute. In other in stances, it is regarded as existing at common law independen of statute. 39 Ohio Jurisprudence 1-2, Taxpayers' Actions Section 1.

The right of a taxpayer to maintain an action as a tax payer on behalf of himself and other taxpayers is a privileg recognizable and exercisable only in a public capacity, and th result to be accomplished must be of benefit to the public withir the taxing district. 39 Ohio Jurisprudence 21, Taxpayers' Ac tions, Section 12.

Counsel for Leonard Kaufman, and others, in preparing their Motion to intervene and plead, may have considered the same in relation to the general statutes of Ohio, concerning taxpayers suits, which are, as to Municipal Corporations, Sec tions 733.56 to 733.61, inclusive, Revised Code, formerly Sec tions 4311 to 4316, inclusive, General Code, and as to Counties Sections 309.12 and 309.13, Revised Code, formerly Section 2921 to 2923, inclusive, General Code.

Under present Sections 733.56, 733.57 and 733.58, Revised Code, the City Solicitor is required to

"apply—for an order of injunction to restrain the mis application of funds of the city, the abuse of its corporate pow

ers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances governing it, or which was procured by fraud or corruption''

"to apply for the forfeiture or the specific performance— as the nature of the case required—when an obligation or contract made on behalf of a city, granting a right or easement or creating a public duty is being evaded or violated''

"apply for a writ of mandamus to compel the performance of—duty'' in case an officer or board of a city fails to perform any duty expressly enjoined by law or ordinance.''

The taxpayers rights as to the same are found in Section 733.59 and 733.61, Revised Code,

"If the City Solicitor fails, upon the written request of any taxpayer of such city to make any application provided for in Sections 733.56 to 733.58, inclusive, Revised Code, such taxpayer may institute suit in his own name, on behalf of the city. Any taxpayer of any municipal corporation in which there is no solicitor may bring such suit on behalf of such municipal corporation. No such suit or proceeding shall be entertained by any court until the taxpayer gives security for the cost of the proceeding.''

"If the court hearing the case under Section 733.59, Revised Code, is satisfied that the taxpayer had good cause to believe that his allegations were well founded, or if they are sufficient in law, it shall make such order as the equity of the case demands. In such case, the taxpayer shall be allowed his costs, and, if judgment is finally ordered in his favor, he may be allowed, as part of the costs, a reasonable compensation for his attorney.''

There are many decisions of the Courts under the above sections, but the ones of interest here involve the right of a taxpayer to enter into a suit filed by the City Solicitor on his request, and we find the following:

1. An order of the trial court allowing a taxpayer to intervene in an action brought by a city solicitor under the provisions of Sections 4311 and 4314, General Code, cannot be reviewed upon an application of such taxpayer for the allowance of attorney fees, and, for the purposes of such application,

such order is conclusively presumed to have been properly made.

2. The failure of a city solicitor to use reasonable diligence in prosecuting an injunction suit instituted by such solicitor at the written request of a taxpayer under Section 4311 and 4314, General Code, constitutes a failure to comply with the written request of the taxpayer within the meaning of those sections, and authorizes such taxpayer to prosecute such suit in his own name on behalf of the municipality. *City of Cleveland* v. *Walsh,* 67 Ohio App., 479 (June 1941)* 1st & 2nd paragraphs of syllabus.

1. Where the solicitor of a municipal corporation has instituted a suit for an injunction under Section 4311, General Code, at the request of a taxpayer, and the court finds that that solicitor is not proceeding in good faith or with due diligence, the court has the inherent power to allow interested taxpayers to become intervening parties to the action, who thereupon have the same rights to plead, participate in the proceeding and appeal as if they had been original parties. *Middletown* v. *City Commission,* 138 Ohio St., 596, 37 N. E. (2d), 609, 21 Ohio Opinions, 481, 1st paragraph of syllabus (Nov. 1941).

There is in jurisprudence, what is known as "Amicus Curiae." As to the exact position of "Amicus Curiae," there has been much discussion in the reported cases, and we find that the trial courts frequently disagree with the higher courts as to what is the actual position of "Amicus Curiae."

"AN 'Amicus Curiae' literally meaning a friend of the court, is one who, as a standerby, when a judge is doubtful or mistaken, may inform the court. The term is also sometimes applied to a person who is not a proper or necessary party but who is allowed to appear to protect the interests of a party he represents." 3 Corpus Juris (2d), 1046, Amicus Curiae, Section 1.

We find that the General Assembly of Ohio has expressly recognized "amicus CURIAE," in Section 2503.39, Revised Code (formerly Section 1477, General Code), with right to

---

*34 Ohio Law Abs., 499, 21 Ohio Opinions, 446, 37 N. E. (2d), 397.

appear in the Supreme Court of Ohio; in cases involving constitutionality of a law of the state:

Oral arguments must be heard in a cause in the supreme court if either party so requests, but the written arguments of counsel may be transmitted to the court, placed on file with the papers, and read by the court in the investigation of the cause. In cases involving the constitutionality of a law of the state, the court, upon request, shall permit not more than two attorneys at law on each side, in addition to the attorneys engaged by the parties, to be heard orally, or in writing, as such attorneys prefer.

We note ''Amicus Curiae'' in the following reported cases:

*State of Ohio* v. *Mehaffey*, 112 Ohio St., 330; 147 N. E., 506, 3 Ohio Law Abs., 495 (construction of statutes relative to small loans and licensing) Amicus Curiae appeared, in addition to counsel for the parties.

In the case of ''*In the Matter of Assignment of Judges to Hold District Courts*,'' 34 Ohio St., 431, regarding constitutionality of acts placing certain duties upon the Supreme Court there were appearances by Amicus Curiae, in support of the constitutionality and contra.

Also, in ''*State, ex rel. McClain,* v. *Coshocton County Commissioners*'' (1909), 30-40 O. C. C. (O. C. D.), 682, 16 O. C. C. (N. S.), 144, Amicus Curiae appeared, and apparently filed an affidavit.

We find very interesting prolonged litigation involving interpleading defendants, and also amicus curiae, before the Courts in the 1880's-1890's, starting in Hamilton County. The question involved the title to 160 acres of land on Price Hill on the western side of Cincinnati, in which the primary question arose from attempt to have a copy of a foreign will admitted to record in Ohio, the original will being claimed to have been admitted to probate in Westmoreland County, Pennsylvania, October 21, 1822. The Probate Court of Hamilton County, Ohio (Judge Goebel) refused to admit the copy of the foreign will to record, holding that it was not satisfied with the foreign record:

To admit a copy of a will from another state to record in this state, the original will must have been admitted to probate

408

and record, and the court admitting it to record here must be satisfied of that fact.

This is reported in *"In Matter of Last Will and Testament of Robert B. Barr, deceased,"* 15 Weekly Law Bulletin, 319 (May 10, 1886), 9 Ohio Decisions Reprint, 615.

The action of the Probate Court was affirmed by the Court of Common Pleas and on further appeal, it was affirmed by the Circuit Court, In *Barr et al* v. *Closterman et al.*, 1 Ohio Circuit Decisions, 546, 2 Ohio Circuit Court Reports, 387, Goebel Probate Reports, 82 (1887) (affirmed without opinion by Supreme Court, June 7, 1892, 27 Weekly Law Bulletin, 392).

In this opinion, we find that:

After the filing of such application in the probate court, the defendants in error, claiming to be tenants in possession (of certain land) "to which" as their motion recites "the parties making the application claim the said will relates," applied to the court to be made parties, which motion was granted by the court, against the exception of the plaintiffs in error—and thereafter the defendants in error over the like exception were allowed to appear and offer evidence against the admission of said copy to record in said court—and the probate court after such hearing, refused to admit it to record.

The intervening defendants appeared in Court with various motions, apparently offered testimony, and were granted full rights as litigants, on the original hearing and in the appeals and error proceedings.

Thereafter, a second attempt was made to have the copy of the foreign will admitted to record, which application was refused on the ground that the matter was *res adjudicata*, as the first hearing had been an adversary one. *In the Matter of Will of Robert Barr*, 18 Weekly Law Bulletin, 391, 10 Ohio Decisions Reprint, 118.

In the report of this case, in Probate Court, we find the following:

Robert Barr, together with his co-applicants, now come and make a second application to have this will admitted to record. To this application, the same parties who resisted the first application asked again to be heard and for leave to resist. This being granted an answer was filed, pleading that the applicants were concluded by the former hearing.

The judgment of the Probate Court was affirmed by the Court of Common Pleas, which affirmance was reversed by the Circuit Court in *Barr et al* v. *Closterman*, 2 Ohio Circuit Decisions, 251, 3 Ohio Circuit Court Reports, 441, which held that the first hearing was not an adversary hearing, and that the matter was not *res adjudicata*. The intervening parties took the matter on error to the Supreme Court, where no question, apparently, was raised as to their right to take the matter on error to that court. This reversal of the Probate Court and Court of Common Pleas was affirmed by the Supreme Court of Ohio, without report, June 7, 1892, 27 Weekly Law Bulletin, 392.

Among other later litigation in this, Barr Will Matter, we find the following in the opinion of the Court of Common Pleas, to which the application had been certified because the then Probate Judge had been in the litigation previously:

—this is the fifth application for the recording of this will. Three of these applications have found their way to the Supreme Court, and one is still pending upon an order of continuance in the probate court. In all of them, in the lower courts the results were adverse to these applicants and in all but one they were adverse to them in the reviewing courts.

- - - - - - - - - - - -

(motion) by the Barr heirs, to set aside or modify, the entry heretofore made in these proceedings, by which Closterman and other property owners were permitted to appear in the case for the purpos of adducing evidence and taking such other steps as will enable the court to be better advised in determining the questions arising upon the application made to the court as to proof in probating an execution of the will in question.

- - - - - - - - - - - -

The Circuit Court, in passing upon a similar application of this same will, expressed the opinion that the offer for record is an *ex parte* proceeding only. In view of that opinion, this court, upon the application at bar, refrained from making Closterman and others parties to the proceeding, in the sense that they were to be adversary parties, but caused the order to be entered by which they, as *amicus curiae*, might be enabled to adduce evidence which might throw light upon the question

of proof and execution of the alleged will. This course is not only just and proper and conducive to a correct conclusion of the questions raised upon the application, but also in conformity with the spirit of the law as declared by the circuit court in the case of *Mercantile Trust Co.* v. *Aetna Iron Co.*, in 2 Circ. Dec., 718 (4 Ohio Circuit Court Rep., 579). It would seem to be reasonable and fair that persons whose property rights might be affected by the recording of such will, should have the opportunity of furnishing the court with evidence upon the subject matter under investigation. It would relieve the Court from being limited to the consideration of only such evidence as the applicant would choose to produce in his own interest, and would secure for the court evidence upon facts which the applicant might find to his interest to suppress. It is obviously in the interest of justice that such an entry should be made, and having been made, this court finds no reason why it should be set aside or modified. And the motion, is therefore, overruled. *In re Admission to Record of Will of Robert Barr* (April 13, 1891), 30 Weekly Law Bulletin, 386, 11 Ohio Decisions Reprint, 910.

That the intervening parties, whether or not *amicus curiae* were recognized as proper parties in the case, is found in later proceedings in *Barr* v. *Closterman*, 4 Ohio Circuit Decisions, 641, 7 Ohio Circuit Court Reports, 371, where the report shows that in the Court of Common Pleas:

On July 30, 1892, the counsel who had made the application, applied to that court (Judge Evans presiding) and obtained an order admitting a copy of the will to record, and directing the transmission of the papers in the case, with a certified copy of the order then made, to the probate court, to carry it into effect.—Wm. H. Elder and others, who had originally intervened in the probate court to resist the application, filed in the court of common pleas, a motion to vacate the order thus made, on the ground (among others) that it had been obtained by counsel for the applicants, without notice to any of the adverse parties, though he had frequently been notified that they would resist the application.—at the same term, the court (Judge Evans presiding) entered an order reciting the fact that the original order had been made by him on the day

before his departure for his summer vacation,—''and the court now finding that said order was obtained by misrepresentations of the parties obtaining the same, and that said order should not have been made but for said misrepresentations, by which the court was misled and imposed upon''—the court then ordered said entry of July 30 to be set aside.

In the *Barr* v. *Closterman cases*, the intervening defendants, as parties, or as *amicus curiae* claimed certain rights in this real estate, and were thus interested directly, and the several courts recognized their rights to so appear in the prolonged litigation.

We have another case, where parties intervened in a different situation and this right was recognized by the courts.

This is where the County Commissioners of Montgomery County, Ohio, decided to clear the title to the Court House land, so that the land could be sold, if it was decided to do so. The first proceeding in the Court of Appeals, is reported in *Board of County Commissioners* v. *Unknown Heirs of Cooper et al.*, 50 Ohio Law Abs., 20, 75 N. E. (2d), 84. The unknown heirs of Cooper and of other unknown defendants had been served with publication, the defendant City of Dayton had filed a demurrer, which was overruled, and it did not plead further. The only defense was made by intervening defendants. The Court of Common Pleas rendered an opinion in favor of the quieting the title to the real estate, and the intervening defendants appealed, before there was a Journal Entry in the matter in Court of Common Pleas.

The Court of Appeals in the reported case, above, says:

Plaintiffs filed an action to quiet title to present court house property, making the unknown heirs of Daniel G. Cooper and the City of Dayton, parties defendant. The appellants, as friends of the court and as citizens and residents of said county, filed an intervening answer, claiming for themselves and all other citizens and residents of said county, a vested interest in said property by virtue of the dedication by Daniel C. Cooper of said property for ''court house and jail purposes.'' These appellants were not made parties to the action, but attempted to become parties by their own intervention.

A motion was filed to strike the answer, but the trial court

permitted the appellants to remain in the case. The trial court had authority to recognize the appellants in the capacity of *"Amicus Curiae."* The appellants do not claim to be the owners of real estate or taxpayers of said county. Their sole claim to be considered parties to the action is that they are friends of the court, citizens and residents of said county.

— — — — — — — — — — — — — — — —

While the appellants are to be commended for their civic interest, we fail to comprehend how they have any standing in court as parties to the action at law or in equity, as an *"Amicus Curiae"* has no right to except to the rulings of the court or prosecute an appeal. 1 Ohio Jurisprudence, 967. By no process of legal reasoning can a friend of the court become a party to an action. Neither can a person who manifests a lively civic interest in a certain piece of litigation, claim that he possesses a "substantial right," which may be affected by the judgment of the court on the sole ground that he is a citizen or resident of the county. Section 12223-2, General Code. Neither do we find that the appellants possess "an interest in the controversy adverse to the plaintiff," or that either of them was a "necessary party to a complete determination or settlement of a question involved therein." Section 11255, General Code.

The appellants possess no substantial right in the action, nor can it be claimed that their interest is adverse or that they are necessary parties to the action by virtue of being residents and citizens of the county. The provisions of Section 11257, General Code, have no application, as there is no community of interest, and the doctrine of virtual representation does not apply.

The Court of Appeals dismissed the appeal as prematurely filed. Then in the Court of Common Pleas, the intervening defendants amended their answer by inserting the word "taxpayers" along with the other designations. The finding of the Common Pleas Court was journalized, and the intervening defendants appealed to the Court of Appeals on Question of Law and Fact (Trial de novo), Counsel for Board of County Commissioners, the Plaintiff, filed motion to dismiss the appeal, on ground that the intervening defendants had no right to ap-

eal the case, on ground they were not property in the case. The opinion of the Judges of Court of Appeals of Third Appellate District, sitting by designation, overruled this Motion, and in the unreported opinion, says:

By the judgment quieting the title of the Plaintiff against the Defendants, which included the intervening defendants, the Common Pleas Court sustained the claim of the Plaintiff and found against the claim of intervening defendants.

By this judgment, the intervening defendants and all members of the class on whose behalf the intervening answer was filed are precluded from asserting any legal or equitable right or interest in said lots. 52 American Juris, Taxpayers Actions, Section 38, pp 26-27.

It is established by cases from jurisdictions other than Ohio, that equity will enjoin at the instance of a citizen and taxpayer the conveyance away or diversion to unlawful uses of municipal property. 52 American Jurisprudence, Taxpayers' Actions, Section 14, p 10.

It is also established by cases in jurisdictions that in relation to the granting of relief to taxpayers' actions, no distinction exists between counties and municipal corporations proper, such as cities and towns. 52 American Jurisprudence, Taxpayers' Actions, Section 6, p 4.

The right of a taxpayer to institute and maintain an action in a proper case for the protection of his own interests, or those of other taxpayers, or of the public generally, has long been recognized in Ohio. In some instances this right is granted, or at least defined and regulated, by statute. In other instances, it is regarded as existing at common law independent of statute. 39 Ohio Jurisprudence, Taxpayers' Actions, Section 1, pp 1-2.

There is no statute in Ohio, granting, regulating or defining the right asserted by the intervening defendants in their answer, to institute an action for the purposes set forth in their answer.

However, it is established by the decisions of the Ohio courts, that even in the absence of legislation, a taxpayer has a right to call upon a court of equity to interfere to prevent the consummation of a wrong such as occurs when public officers attempt to make an illegal expenditure of public money, or to

414

create an illegal debt, when he, in common with other property holders of the taxing district might otherwise be compelled to pay. 39 Ohio Jurisprudence, Taxpayers' Actions, Section 2 p 2.

Upon the same reasoning upon which these decisions are based, it appears that under the laws of Ohio, the absence of a statute granting, regulating, or defining the rights of a citizen or taxpayer to institute an action of the character pleaded by the intervening defendants in their answer, a citizen or taxpayer of a county, in his own behalf and in behalf of others similarly situated, claiming as beneficiaries of a trust for a specific use in real estate, the record title to which is in the name of the board of county commissioners may, by petition in an original action, or by answer and cross-petition in a pending action involving the determination of the nature and character of the title of said Board to said real estate, institute an action against the board of county commissioners for an adjudication that the title to said real estate is held by said board in trust for a specific use, for the enforcement of such trust, and for other equitable relief, as was done by the intervening defendants in the instant case.

The intervening defendants were made parties defendant in the instant case and are bound by the judgment and decree therein which adjudges that they have no right, title or interest in said real estate and denies any relief to them.

By their answer, they plead facts which, if proven, entitle them to equitable relief.

The judgment and decree therefore adversely affects a substantial right asserted by the intervening defendants in their answer and the intervening defendants therefore have legal right to appeal.

For the reasons mentioned, the motion to dismiss the appeal is overruled.

The case then came on for hearing on its merits, before the Judges of the First Appellate District, sitting by designation, where that Court found in memo opinion:

The Court finds on the issues joined in favor of the Plaintiff-Appellee. A decree similar to that entered in the Court of Common Pleas may be entered in this Court.

After the Journal Entry was entered, the intervening defendants, as Appellants, filed a Motion to Certify the Record and an Appeal as of Right, on constitutional grounds in the Supreme Court of Ohio. The Motion to Certify Record was overruled, and a Motion to dismiss the appeal filed as of right was sustained, on June 22, 1949. *Board of County Commissioners v. Unknown Heirs, etc., of Cooper,* 152 Ohio St., 202, 88 N. E. (2d), 293, 40 Ohio Opinions, 176.

The instant case does not come under the Barr Will case of Hamilton County, supra, as the intervening defendants here are not claiming that they are interested as claimants as to the real estate attempted to be detached from City of Wilmington. Neither does the instant case come under the Board of County Commissioners of Montgomery County case, supra, as the City does not own or claim to own this real estate. Neither does the same come strictly under the classes of cases regulated by statute, as to suits by the City Solicitor.

However, the plaintiffs here claim that this land is farmed and used for agricultural purposes, and should be detached, from the municipal corporation, under the statutes. The answer filed on behalf of the City of Wilmington states that it believes that the immediately prospective use of the land described in the petition is as a commercial shopping center, rather than for agricultural purposes.

The motion of the proposed intervening petitioners, which motion the Court granted, sets out:

the defense interposed to the petition is not sufficiently adverse to protect the best interests and good government of said City and constitutes an abuse of corporate power; that the intervention of these petitioners is appropriate in order that the facts and issues involved in this proceeding may be fully explored and the Court adequately informed regarding the same.

The Court finds that the Intervening Defendants, if they knew of any proper reason why this land should not be detached from the City of Wilmington, Ohio, not only had the right and have the right to present such facts to the Court, but that they, as residents and taxpayers had the *duty* to properly and adequately present such facts to the Court, in order that

the Court might be fully advised of the situation, and not have to try and decide the case "in the dark."

This Court feels that if parties believe a petition is not filed in good faith in Court, in a matter involving the public or public rights, they should have the right to appear in Court and call the attention of the Court to the lack of good faith, or to the fact that they feel an imposition is being tried upon the Court. The Court feels that a matter of the public boundaries of a municipality involves the public generally, and that a petition for detachment of claimed agricultural land affects the residents and citizens of the City, particularly where a city may have a zoning ordinance regulating buildings, residences and businesses.

The Courts have generally held that in matters where parties ask the right to interplead as defendants, that the Courts have great powers as to such allowances of appearance, by parties, who technically are not strictly plaintiffs nor defendants; and in such allowances to allow such intervening parties to file pleadings, offer evidence, and to appeal.

The statute regulating this right of detachment states that "summons shall issue as in other actions, and the case shall proceed as in other causes."

Under the statute and the inherent power of the Court, the Court finds that the Motion of Leonard Kaufman and others to be made parties defendant was proper, and from what they set out, the Court further finds that the allowance of such request by said parties, was and is correct, and that under such entry by the Court, said intervening parties shall have right to plead and to offer evidence; the question of appeal not now being before this Court.

The Court therefore finds that the Motion of the Plaintiffs to strike the Motion of Leonard Kaufman and others, as residents and taxpayers, from the files, and to strike the entry of this Court of September 23, 1960, making these parties, Leonard Kaufman and others, intervening defendants, with right to plead, is overruled.

Proper entry to be prepared by counsel for Leonard Kaufman and others, with exceptions to the plaintiffs; same to be presented to this Court for approval not later than ten (10) days from date of this opinion.